**UNITED STATES of America, Appellee,**

v.

**Gary GREEN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Gary GREEN and Jose Chaverra, Appellants.**

**Nos. 81–1502, 82–1055.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1982.

Decided May 20, 1982.

---

George W. Proctor, U. S. Atty., Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Mays, Crutcher & Brown, P. A. by Darrell F. Brown, Little Rock, Ark., for appellant Chaverra.

Lessenberry & Carpenter by Thomas M. Carpenter, Little Rock, Ark., for appellant Green.

Before BRIGHT and HENLEY, Circuit Judges, and BARTLETT,* District Judge.

* D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

BRIGHT, Circuit Judge.

Gary Green appeals his convictions for possession of cocaine with intent to distribute and conspiracy to possess a schedule II controlled substance (cocaine) with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. Following a jury trial, the district judge[1] sentenced Green to five years' imprisonment on each count, to run concurrently, plus a special parole term of three years.

In the same case, the jury also found Jose Chaverra guilty of conspiracy to possess cocaine with intent to distribute. The district court sentenced Chaverra to a term of imprisonment for five and one-half years. Chaverra did not appeal his conviction.

While Green's appeal remained pending before this court, Green and Chaverra each filed a motion for a new trial on the grounds of newly discovered evidence. These motions alleged that police had unlawfully obtained cocaine and other evidence from Green's farmhouse. This court, while retaining jurisdiction over Green's initial appeal, remanded the case to the district court for its consideration of Green's motion for a new trial. The district court denied the new trial motions of both defendants. Green and Chaverra each appealed from that order.[2] We now affirm the convictions of Gary Green as well as the order denying Green and Chaverra a new trial.

The issues on appeal focus on the seizure of cocaine from Green's farmhouse in Mayflower, Faulkner County, Arkansas. Law enforcement officers obtained permission to search Green's farmhouse from Jorge Alvarez, who was using the house for drug traffic at the time. Green concedes that he permitted Alvarez to stay at the farmhouse, but contends that Alvarez did not have

2. The appeal from the order denying a new trial to Green and Chaverra bears docket No. 82-1055. Green's initial appeal carries docket No. 81-1502.

authority to consent to a search of the house and, alternatively, that police used coercion and unlawful threats in obtaining Alvarez' consent to search.[3]

The Government's evidence indicates that Alvarez obtained cocaine from Chaverra in Miami, Florida, and that Alvarez, in turn, sold the cocaine to customers provided by Green. Green permitted Alvarez to stay in Green's farmhouse, and to use the farmhouse to distribute cocaine. For his part in bringing customers to Alvarez, Green received $100 on the sale of each ounce of cocaine.

The incident leading to the arrests and indictment of Green and Chaverra occurred in October 1980. On October 6, an informant, John Healey, brought Alvarez into contact with Mike Lowery, an undercover agent posing as a customer. Lowery purchased two ounces of cocaine from Alvarez for $4,200. Thereafter, in the early morning hours of October 7, Lowery attempted to negotiate an additional purchase of cocaine. In the course of these negotiations, Alvarez invited undercover agent Mike Hurley into the farmhouse. Hurley posed as Lowery's associate. Instead of making the purchase, however, Hurley and other law enforcement agents arrested Alvarez, gave him *Miranda* warnings, and sought his cooperation in obtaining evidence against Green. Alvarez consented to a search of the farmhouse. He led the law enforcement agents to a mattress under which he had placed the money he had obtained from them in the previous drug transaction. He also showed the agents where he had hidden some cocaine in a vacuum cleaner and stated that he had placed an additional supply of cocaine behind a board in the bathroom wall. The agents then removed the board and retrieved the cocaine.

The trial court determined that Alvarez, as an occupant of the farmhouse, possessed the authority to consent to a search of the premises. *See United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 993 n.7, 39 L.Ed.2d 242 (1974). Green does not seriously contest this determination. Instead, Green and Chaverra assert that the seizure of evidence from Green's farmhouse violated the fourth amendment, because Alvarez did not voluntarily consent to the search and seizure. They maintain that Alvarez was incapable of voluntarily consenting, because he was high on drugs at the time. In addition, Green and Chaverra allege that the law enforcement officers coerced Alvarez into consenting to the search. Specifically, they allege that the law enforcement officers at the scene threatened Alvarez with deportation, threatened to arrest his girlfriend if he did not cooperate, and told him that the officers could obtain a search warrant and tear the house apart if he did not turn over the drugs and money.[4]

The parties hotly contested the voluntariness of Alvarez' consent. Alvarez testified for the Government at the suppression hearing, and his testimony supported the district court's finding that he consented to the search and seizure of the evidence without any unlawful coercion.

---

3. The district court rejected this latter contention in denying Green's pretrial motion to suppress the evidence seized. In his posttrial motion for a new trial, Green alleged additional information that police coerced Alvarez into consenting to the search of the farmhouse. Following a hearing, the district court denied the motion for a new trial.

Although Chaverra did not appeal his conviction, he now asserts that the evidence produced on the motion for a new trial demonstrates perjury by law enforcement officers. He contends that this perjury so infected his trial as to entitle him to a new trial.

4. Green and Chaverra introduced testimony from Officer Woodward at a hearing on their motions for a new trial, to bolster their claims that the police had obtained Alvarez' consent by threats. Woodward testified that Alvarez requested an attorney and that he overheard an officer tell Alvarez that Alvarez could get 20 years and be deported. In addition, Green and Chaverra introduced testimony by John Healey, who, in recanting his previous testimony, indicated that Alvarez had been threatened by the police and was high on drugs at the time he gave his consent.

The court discredited much of Healey's and Woodward's testimony and determined that the incidents to which Woodward testified, even if true, would not affect the voluntariness of Alvarez' consent.

We will not reverse the findings of the district court, which are based on credibility determinations, as long as substantial evidence exists to support the conclusions reached and no clear error appears on the record. *United States v. Weeks*, 645 F.2d 658, 659–60 (8th Cir. 1981); *United States v. Mullins*, 487 F.2d 581, 589 (8th Cir. 1973). The record in this case supports the district court's conclusion that Alvarez voluntarily consented to the search and seizure of the evidence.[5] Inasmuch as the district court's finding that Alvarez voluntarily consented to the search rested on credibility determinations supported by the record, it also properly denied Green and Chaverra's motions for a new trial.

Accordingly, we affirm Green's convictions and the order denying Green and Chaverra a new trial.

5. Our decision in this case is not inconsistent with our ruling in *United States v. Kampbell*, 574 F.2d 962 (8th Cir. 1978). In *Kampbell*, we affirmed the trial court's order suppressing evidence on the ground that the defendant had not voluntarily consented to a search of his home. Our affirmance rested on the trial judge's superior opportunity to assess the credibility of witnesses. *Id.* at 964. Thus, although in this case Judge Eisele reached a conclusion contrary to that reached in *Kampbell*, the decision rests on supportable credibility determinations made by the trial judge. *See also United States v. Culp*, 472 F.2d 459 (8th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973).